```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                         :
ERIC ANDREW PEREZ,                                       :
                                                         :
                              Plaintiff,                 :
                                                         :   24-CV-356 (VSB) (SN)
                - against -                              :
                                                         :   OPINION & ORDER
                                                         :
DR. NEIL C. EVANS, et al.,                               :
                                                         :
                              Defendants.                :
                                                         :
---------------------------------------------------------X
```

Appearances:

Eric Andrew Perez
San Antonio, FL
*Pro se Plaintiff*

Rebecca Lynn Salk
United States Attorney's Office for the Southern District of New York
New York, NY
*Counsel for Defendants Dr. Neil C. Evans, Carol Johnson, George Reed Grimes, Damian Williams, and Melanie Jay*

Jodyann Galvin
Cheyenne Nicole Freely
Hodgson Russ LLP
Buffalo, NY
*Counsel for Defendant Dr. Mark J. Mulligan*

Alexander Cousins
Arthur Edward Brown
Arnold & Porter Kaye Scholer LLP
New York, NY
*Counsel for Defendants AstraZeneca AB, AstraZeneca Pharmaceuticals LP, and AstraZeneca UK Ltd.*

VERNON S. BRODERICK, United States District Judge:

Before me are pro se Plaintiff Eric Andrew Perez's objections to Magistrate Judge Sarah Netburn's Report and Recommendation, which recommends that I dismiss Plaintiff's Amended Complaint with prejudice. For the reasons that follow, Plaintiff's objections are OVERRULED, Judge Netburn's Report and Recommendation is ADOPTED in its entirety, and Plaintiff's Amended Complaint is DISMISSED with prejudice.

I. **Factual Background**

Plaintiff Eric Andrew Perez ("Plaintiff" or "Perez"), a veteran of the United States Marine Corps, participated in a clinical trial of AstraZeneca's COVID-19 vaccine at the Department of Veterans Affairs ("VA"). (Doc. 37 ("Am. Compl.") ¶¶ 6, 21.) Perez claims that he received the vaccine in two doses, on December 22, 2020, and January 19, 2021. (*Id.* ¶ 37; *see also* Doc. 132 ("Report") at 2.) Immediately after receiving the first dose of the vaccine, Plaintiff states that he began suffering from a host of medical issues, including migraines, non-alcoholic fatty liver disease, and persistent peroneal vein thrombosis in his right calf, all of which Plaintiff attributes to the vaccine. (Am. Compl. ¶¶ 31, 33.)

In February 2021, the director of the vaccine study informed Plaintiff that he had not received the vaccine and instead received a placebo. (*Id.* ¶ 29.) Plaintiff alleges that the portion of his medical record indicating he received a placebo is fraudulent and was created as part of a broader conspiracy. (*Id.* ¶¶ 22, 29.)

Plaintiff then filed a claim through the Health Resources & Services Administration's Countermeasures Injury Compensation Program ("CICP"), (*id.* ¶¶ 27, 35), which is a federal program that compensates serious injuries or deaths that occur because of the administration of certain countermeasures during public health emergencies, (*see* Report at 3 (citing 42 U.S.C.

2

§ 247d-6e; 42 C.F.R. § 110)).  The COVID-19 vaccine was declared a "covered countermeasure" on March 17, 2020, pursuant to the Public Readiness and Emergency Preparedness Act ("PREP Act").  *Id.* (citing 85 Fed. Reg. 15,198, at 15202 (Mar. 17, 2020).)  CICP requested additional information and records from Plaintiff about his claim, and Plaintiff in turn filed a HIPPA request with the VA Medical Records Office requesting documentation of his participation in the AstraZeneca study.  (Am. Compl. ¶¶ 43–45.)  On September 13, 2023, the VA Medical Records Office denied Plaintiff's request due to his failure to properly complete the necessary paperwork.  (*See* Doc. 1-1 at 6.)

Based on these events, Plaintiff asserts that his CICP claim is being "deliberately obstructed" by members of the federal government.  (Am. Compl. ¶ 21.)  Plaintiff alleges the existence of a widespread racketeering conspiracy between all Defendants to cover up experimentation on veterans through the COVID-19 vaccination program.  (*Id.* at 9; *see also id.* ¶¶ 29, 35.)  He claims his medical records have been deliberately altered as part of a cover-up of the conspiracy, and that certain Defendants have illegally cloned his electronic devices and iCloud, allowing them to delete and alter his records.  (*Id.* ¶¶ 27, 29, 35, 38.)

## II.     Procedural History

On January 16, 2024, pro se Plaintiff filed his complaint.  (Doc. 1.)  That same day, Plaintiff filed a consent to receive electronic service through the ECF system.  (Doc. 4.)  On April 3, 2024, I referred this case to Magistrate Judge Robyn F. Tarnofsky for general pretrial management.  (Doc. 25.)  On April 9, 2024, the referral was reassigned to Magistrate Judge Sarah Netburn.  On April 25, 2024, Plaintiff filed an Amended Complaint against various Defendants, including Dr. Neil C. Evans, Carol Johnson, Dr. Mark J. Mulligan, George Reed Grimes, Damian Williams, AstraZeneca LP, AstraZeneca AB, AstraZeneca UK Lmdt, Melanie

3

Jay, AstraZeneca Pharmaceuticals LP, and AstraZeneca UK Ltd. (Am. Compl.)

On September 6, 2024, Defendant Mark J. Mulligan moved to dismiss Plaintiff's Amended Complaint. (Doc. 99.) The same day, Defendants AstraZeneca AB, AstraZeneca Pharmaceuticals LP, and AstraZeneca UK Ltd. (collectively, the "AstraZeneca Defendants") also moved to dismiss, (Doc. 101), as did Defendants Neil C. Evans, George Reed Grimes, Melanie Jay, Carol Johnson, and Damian Williams (collectively, the "Federal Defendants"), (Doc. 103). On December 11, 2024, I referred the motions to dismiss to Magistrate Judge Netburn for a Report and Recommendation. (Doc. 125.)

On May 15, 2025, Magistrate Judge Netburn issued a thorough 27-page Report and Recommendation (the "Report"), recommending that I grant the motions to dismiss and dismiss Plaintiff's Amended Complaint with prejudice. (*See* Report at 26.) The Report notes that because Plaintiff cannot allege new facts to cure the deficiencies in the Amended Complaint, amendment would be futile with respect to all of his claims. (*Id.* at 24.)

On May 22, 2025, I granted Plaintiff's request to extend his time to object to the Report to July 14, 2025. (Doc. 135.) On July 14, 2025, Plaintiff filed objections to the Report. (Doc. 136 ("Obj.").) On July 28, 2025, Defendant Mark Mulligan filed a response to Plaintiff's objections, (Doc. 138), as did the AstraZeneca Defendants, (Doc. 139). On July 29, 2025, the Federal Defendants filed a response to Plaintiff's objections. (Doc. 140.)

On July 28, 2025, Plaintiff moved for a temporary restraining order. (Doc. 141.) On August 1, 2025, I issued an order informing Defendants that they need not respond to the motion for a temporary restraining order until after I issue my opinion regarding the pending Report. (Doc. 142.)

On September 19, 2025, Plaintiff filed a motion "requesting that the Court enter an

4

emergency order directing the immediate preservation of all evidence and information potentially relevant to the above-captioned matter," (Doc. 144 at 1), in addition to another motion for preservation of evidence, (Doc. 145), and a proposed order granting Plaintiff's motions, (Doc. 146).

### III. Legal Standard

After a magistrate judge issues a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate [judge], to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Trs. of Drywall Tapers & Pointers Loc. Union No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304, 2019 WL 1745743, at *1 (S.D.N.Y. Apr. 18, 2019) (internal quotation marks omitted). Where specific objections are made, the court is obligated to review the contested issues de novo. *See* Fed. R. Civ. P. 72(b)(3). However, when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error. *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases). "Moreover, parties may not raise new arguments for the first time in objections to a report and recommendation." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 120 (S.D.N.Y. 2023). In other words, "a party is not to be afforded a second bite at the apple when filing objections to a Report and Recommendation, as the goal of the federal statute providing for the assignment of cases to magistrate[] [judges] is to increase the overall efficiency of the federal judiciary." *Michaud v. Nippon Cargo Airlines, Co.*, No. 09-CV-3375, 2011 WL 5402642, at *1 (E.D.N.Y. Nov. 7, 2011) (internal quotation marks and alterations omitted). Even where exercising de novo

review, a "district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Loc. 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order).

Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). However, a pro se litigant is still "obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006). Accordingly, "where a pro se party's objections to a report and recommendation are 'conclusory or general,' or where a plaintiff 'simply reiterates his original arguments,' the report should be reviewed only for clear error." *DeGrate v. Broad. Music, Inc.*, No. 12-CV-1700, 2013 WL 639146, at *2 (S.D.N.Y. Feb. 20, 2013) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).

## IV. Discussion

Plaintiff filed 81 pages of objections, in addition to 184 pages of exhibits. Without counting the pages of exhibits, Plaintiff's objections alone are three times the length of the Report itself, which is far longer than the permissible length of memoranda under the Local Rules in this District, *see* S.D.N.Y. Civ. Rule 7.1, as well as my Individual Rules, *see* Rule 4.B, *Individual Rules & Practices in Civil Cases for Judge Vernon S. Broderick*, and contrary to the purpose of referrals under the Federal Magistrates Act, which is to create efficiency. *See United States v. Gardin*, 451 F. Supp. 2d 504, 507 (W.D.N.Y. 2006).

Plaintiff acknowledges that he "used Chat GPT to draft his first draft of this submission."[1] (Obj. 2 n.1.) Plaintiff includes seventeen footnote citations to ChatGPT throughout his objections, including, for instance, a citation to a copy of a conversation in which an anonymous user, presumably Perez, prompted ChatGPT to "prepare legal memorandum countering government sovereignty claims." (*See, e.g.*, Obj. 46 n.28.) ChatGPT generated a non-case-specific legal memorandum in response, much of which is included in Plaintiff's Objections verbatim. (*See* Obj. 46–47.)

Although I am unaware of any applicable federal or local rules prohibiting the use of AI during the course of litigation, *see Gordon v. Wells Fargo Bank N.A. Inc.*, No. 24-CV-388, 2025 WL 1057211, at *3 (M.D. Ga. Apr. 8, 2025); *Nelson v. Wash. Bd. of Indus. Appeals*, No. 25-CV-5551, 2025 WL 1772085, at *1 (W.D. Wash. June 26, 2025), and my Individual Rules do not address the use of AI, litigants, including pro se parties, must adhere to their obligations under Rule 11(b) of the Federal Rules of Civil Procedure. Rule 11(b) states, in part, that "[b]y presenting to the court a pleading, written motion, or other paper . . . [an] unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." At the bare minimum, this obligation requires litigants to carefully review every statement and citation drafted by AI to ensure that it is legally and factually correct, particularly given that AI tools make it much easier for pro se

---

[1] ChatGPT is a generative artificial intelligence ("AI") tool.

7

litigants to submit "voluminous" briefing. *See Thornock v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 25-CV-56, 2025 WL 1900314, at *4 n.5 (E.D. Va. July 9, 2025).

Here, Plaintiff failed to meet his obligations under Rule 11. At least two citations in Plaintiff's objections appear to be "hallucinated," a term used for citations produced by AI "that conform to the Bluebook, but ultimately are not real." *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 342 (E.D.N.Y. 2025); *see also Legal ChatGPT: Tips, Prompts, and Use Cases*, American Bar Association (Mar. 21, 2025), https://www.americanbar.org/groups/law_practice/resources/law-technology-today/2025/legal-chatgpt-tips-prompts-and-use-cases/ ("AI-powered chatbots are prone to hallucinations, have trouble understanding contextual nuances of the law, and have trained-in biases."). Since the advent of generative AI, hallucinated cases have become a disturbing problem in legal filings, and the "epidemic of citing fake cases has continued unabated." *Benjamin*, 779 F. Supp. 3d at 343; *see also Hall v. Acad. Charter Sch.*, No. 24-CV-08630, 2025 WL 2256653, at *4 (E.D.N.Y. Aug. 7, 2025) ("Regrettably, the number and regularity with which courts have been faced with hallucinations in court filings continues to rise both in this country and abroad."); *Pegnatori v. Pure Sports Techs. LLC*, No. 23-CV-01424, 2023 WL 6626159, at *5 n.5 (D.S.C. Oct. 11, 2023) ("[T]hus far ChatGPT's batting average in legal briefs leaves something to be desired."). Not only do citations to hallucinated cases run afoul of a litigant's obligation to verify that legal contentions are "warranted by existing law" under Rule 11(b), fake citations are also a profound waste of the opposing party's time, as well as the Court's time. As one court put it:

> When used carelessly, [AI] produces frustratingly realistic legal fiction that takes inordinately longer to respond to than to create. While one party can create a fake legal brief at the click of a button, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are

8

true. As AI continues to proliferate, this creation-response imbalance places significant strain on the judicial system.

*Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 880–81 (N.D. Miss. 2025).

Here, Plaintiff's argument that service of process on Defendant Mark Mulligan was substantially compliant utilizes the quotation "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." (Obj. 28.) Plaintiff attributes that quotation to *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), 2008 WL 5395720, at *4 (S.D.N.Y. Dec. 17, 2008). (*Id.*) This citation appears real because *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), is a real case. However, there is no December 17, 2008 decision in *Concepcion*, nor is there any opinion in the Southern District of New York that corresponds to 2008 WL 5395720. Instead, through research I was able to find the quoted language in *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). In *Armco*, immediately after stating that not every technical violation invalidates service where there is actual notice, the Fourth Circuit stated "[b]ut the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.* The *Armco* court held that service of process was not valid and remanded the case to the district court with instructions to vacate the default judgment entered against the defendant as void on that basis. *Id.* at 1089–90. Accordingly, Plaintiff's version of the *Armco* quotation is not only falsely attributed to a hallucinated case, but it leaves out crucial context undermining Plaintiff's legal argument.

Similarly, in the PREP Act portion of Plaintiff's objections, (Obj. 38–45), Plaintiff cites *United States v. Peterson*, No. 3:17-cr-00065 (D. Conn. 2018), and states that "[i]n this case, the court found that deception about the officers' identity and intent undermined the validity of the consent given." (Obj. 41.) The case corresponding to No. 3:17-cr-00065 in the District of

9

Connecticut is actually *United States v. Cook, et al.*, and there is no defendant in that case by the name of Peterson or any language in that case that support Plaintiff's statement. I suspect that Defendant's hallucinated citation is a scrambled version of *United States v. Peterson*, No. 3:18-CR-00049, 2018 WL 6061571 (D. Conn. Nov. 20, 2018), a case which discusses the issue of law enforcement officers making misrepresentations to a criminal defendant. However, the holding of *Peterson* is the opposite of what Defendant claims. The *Peterson* court found that while police began their interview with the defendant in a "somewhat misleading" manner, the defendant nonetheless "voluntarily consented to the officers entering into and remaining in his home" given the totality of the circumstances. *Id.* at *6–7. Use of these "hallucinations" are a violation of Rule 11(b) and a tremendous waste of my time and the parties' time.[2] Nonetheless, I decline to impose sanctions on Plaintiff for his violation of Rule 11(b), in part due to Plaintiff's admission to using ChatGPT. Setting aside for the moment the AI-related issues with Plaintiff's submission, the majority of the objections do not warrant my consideration under the law. Indeed, for the reasons stated below, I would overrule Plaintiff's objections without the identified AI issues.

Plaintiff attempts to relitigate nearly every aspect of the motions to dismiss that were before Magistrate Judge Netburn and which were analyzed and addressed in the Report. In addition, Plaintiff introduces many new factual contentions and lines of argument. It is well-settled that when the objecting party "simply reiterates the original arguments," the court will review the report only for clear error. *See Jones*, 2012 WL 1592190, at *1 (collecting cases). It is equally well settled that "new arguments and factual assertions cannot properly be raised for

---

[2] It is possible that Plaintiff's brief contains other "hallucinated" citations. Due to its substantial length and the fact that I find the objections without merit, I have not expended the time to verify each citation in the brief.

the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal quotation marks omitted); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2023 WL 4348030, at *2 (S.D.N.Y. July 5, 2023) (same). As most of Plaintiff's objections seek to rehash arguments considered by Magistrate Judge Netburn or to introduce new allegations and arguments, I need not and will not consider these objections on an individual basis. (*See, e.g.*, Obj. 71 (rehashing argument that Plaintiff asserts a colorable claim under the Computer Fraud and Abuse Act because he alleges unauthorized access to his electronic health records, a claim which the Report comprehensively examined and rejected (*see* Report at 17–20)); Obj. 35 (introducing new and unsubstantiated allegations that Dr. Mulligan's defense counsel is colluding with the FBI and Buffalo law enforcement to run a "coercive harassment system" against Plaintiff)). *See also Morris*, 167 F. App'x at 232 ("The district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety."). Nonetheless, I address a few objections individually below.

At the beginning of Plaintiff's lengthy objections, he asserts that "[t]he R&R fundamentally misconstrues the factual basis and applicable law in this case" and "adopts the Defendants' arguments wholesale without construing the pro se Plaintiff's claims liberally." (Obj. 1–2.) On this basis, he "objects to the R&R in full." (*Id.* at 2.) A "conclusory or general objection[]" will not be considered by a court. *See Jones*, 2012 WL 1592190, at *1 (collecting cases). Thus, Plaintiff's overarching conclusory and general objection to the Report does not warrant consideration. However, even if I were to consider this objection, Plaintiff's claim that the Report fails to construe his claims liberally is simply not true. The Report repeatedly makes

11

clear not only that Plaintiff's arguments were considered in their entirety but also that the arguments were construed liberally. (*See, e.g.*, Report at 18 ("The Court construes Plaintiff's pleadings liberally to assert a claim under 18 U.S.C. § 1030(g)."); *see also* Report at 22, 24, 26.) The Report is replete with citations to the record, as well as to case law addressing the legal standard for each of Plaintiff's claims, most of which Plaintiff does not address in his objections. Plaintiff's objection to the Report on the basis that it failed to construe his pleadings liberally is OVERRULED.

Next, Plaintiff objects to the Report's finding that the action can be dismissed in its entirety as to Dr. Mark Mulligan for insufficient service of process. (Obj. 28–35.) Plaintiff argues that "(1) Dr. Mulligan received actual notice; (2) Plaintiff made multiple good-faith efforts to serve him; and (3) Defense counsel refused to waive service." (*Id.* at 28.) Notably, these are all arguments for why Plaintiff's failure to serve Mulligan should be excused. In other words, Plaintiff does not contest that he failed to properly serve Mulligan.

Plaintiff's arguments fail. First, "actual notice of suit [cannot] cure a failure to comply with the statutory requirements for serving process." *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order); *see also United States v. Thompson*, 921 F.3d 82, 87 (2d Cir. 2019) ("Actual notice of the suit does not cure defective service" (alterations adopted and internal quotation marks omitted)). Second, although Plaintiff did attempt to serve Mulligan, he did not show "good cause" for his failure to properly serve him. *See* Fed. R. Civ. P. 4(m). To the contrary, the Report describes how, on various occasions, "Plaintiff was instructed by both opposing counsel and the Court how to properly effectuate service," and still failed to do so. (Report at 7–8.) Third, it is true that an individual such as Mulligan "has a duty to avoid unnecessary expenses of serving the summons" when a plaintiff requests a waiver of service and

12

complies with the procedural requirements of Rule 4(d) in doing so. However, Perez has not shown that he triggered Mulligan's duty to waive service by submitting a request to waive service in writing with the information required by Rule 4(d). Furthermore, the only case law Plaintiff cites in support of his argument that his failure to serve Mulligan should be excused is *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), 2008 WL 5395720, at *4 (S.D.N.Y. Dec. 17, 2008), a hallucinated case that does not contain the quoted language Plaintiff attributes to it. In any event, the Report also analyzes Plaintiff's claims against Mulligan on the merits and finds dismissal warranted under Rule 12(b)(6), stating that "Plaintiff should not be granted leave to serve Dr. Mulligan because the claims against him are without merit." (Report at 13.) Thus, even if Plaintiff had properly served Mulligan or were to properly serve Mulligan in the future, it would not resurrect the claims against him. Plaintiff's objection regarding his failure to serve Mulligan is OVERRULED.

      Plaintiff also objects to the Report's dismissal of all claims brought under the PREP Act for lack of subject matter jurisdiction. Plaintiff argues that jurisdiction is proper under the willful misconduct exception to the PREP Act, and that the willful misconduct standard was satisfied. (Obj. 38, 45.) Even if this were true, this would not save Plaintiff's claims. The PREP Act provides immunity from suit for the United States and manufacturers, distributors, program planners, and other qualified persons who prescribed, administered, or dispensed a qualified countermeasure, such as various COVID-19 vaccines. *See* 42 U.S.C. § 247d-6d. Plaintiff is correct that there is an exception to this immunity for "death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). However, the PREP Act is clear that any suit brought pursuant to the willful-misconduct exception to immunity "shall be filed and maintained only in the United States District Court for the District of Columbia." 42

13

U.S.C. § 247d-6d(e)(1); *see also Palma v. Cabrini of Westchester*, No. 22-CV-5430, 2022 WL 4240823, at *4 (S.D.N.Y. Aug. 15, 2022) ("[E]ven if plaintiff alleged willful misconduct PREP Act claims, the U.S. District Court for the District of Columbia is the exclusive forum for such claims."). Therefore, even assuming Plaintiff alleges a viable claim for willful misconduct under the PREP Act, the Report correctly notes that I lack subject-matter jurisdiction over all PREP Act claims and must dismiss any such claims under Rule 12(b)(1). Plaintiff's objection regarding the PREP Act is OVERRULED.

Plaintiff objects to the Report's recommendation that his Racketeer Influenced & Corrupt Organizations Act ("RICO") claim against the AstraZeneca Defendants and Mulligan should be dismissed for failure to state a claim. Plaintiff states that his "RICO claims were plausibly alleged," (Obj. 60), and that "Plaintiff alleges a coordinated scheme involving multiple predicate acts including document falsification, fraud, and data manipulation," (*id*. at 64). These objections are conclusory, and I decline to consider them. *See Jones*, 2012 WL 1592190, at *1.

Plaintiff also asserts new factual allegations regarding an alleged RICO conspiracy. For instance, Plaintiff states:

> Plaintiff states that Astra Zeneca operates like a criminal enterprise. First, they analyzed The market at hand and the laws which essentially stated that they could sell poison to the world and face no consequences. Second, they had to enlist key players in the United States government to enforce their scheme which include and is not limited to coercion, targeting, Courts, and PRISM on various targets. Third, emplace a network cyber war specialist within the agencies that would perform various data replications, data modifications, and deletions within various agency databases. . . . In this case AG Damian Williams colluded and joined forces with the Middle District of Florida, Pasco County Sheriff's Office to coerce and control plaintiff EAP. Mr. Williams put maximum effort into the coercion and control of plaintiff EAP through a covert network of confidential informants, con men, network of Florida & NY Correctional Officers & Cadre, Religious organizations, realtors, law enforcement owned construction companies, and home builders. Plaintiff states that the SDNY led by Mr. Williams targeted plaintiff by using the construction supervisor of his present neighborhood and the home builder DR Horton to engineer purchases for collaborators, cooperators, and law enforcement

14

>active and retired that are kin to and entered partnerships with Army CID and Sandusky.

(Obj. 60–61.) I need not consider these allegations because "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation." *WFCM 2016-LC25 W. Bay Area Boulevard, LLC v. Tyler*, No. 21-CV-8865, 2025 WL 2424353, at *1 (S.D.N.Y. Aug. 22, 2025) (quoting *Garcia v. Lamanna*, No. 18-CV-5454, 2022 WL 3445433, at *1 (S.D.N.Y. Aug. 17, 2022)).

Even if I were to consider these statements, Plaintiff's new allegations amount to "vague assertions of fraud and conspiracy" insufficient to make out a civil RICO claim. (Report at 16.) Among other things, to allege a civil RICO claim Plaintiff must show the existence of an enterprise, defined as "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). "Plaintiff['s] conclusory naming of a string of entities does not adequately allege an enterprise." *Id.* at 175 (internal quotation marks omitted); *see also id.* at 174 (finding that Plaintiffs failed to allege an enterprise where they "failed to provide . . . any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise, from which we could fairly conclude that its members functioned as a unit" (internal quotation marks omitted)). In addition, Plaintiff does not allege a "clear and definite" injury to business or property, as he must to make out a civil RICO claim. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). Instead, Plaintiff alleges physical and emotional injury, (*see, e.g.*, Obj. 79 ("Plaintiff has experienced severe neurological symptoms, including paresthesia, muscle dysfunction, and autonomic

dysregulation")), which are not cognizable forms of injury under RICO. *See Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) ("RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries."); *see also Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999) (noting "the lack of a RICO damages remedy for even direct personal injuries"). Thus, Plaintiff's objection regarding his RICO claim is OVERRULED.

Finally, Plaintiff objects to the Report's recommendation that Plaintiff should not be granted leave to amend, stating "[p]ro se plaintiffs should be granted at least one opportunity to amend absent futility." (Obj. 80.) This is a correct statement of the law. The Report acknowledges this, stating that "[g]enerally, a pro se litigant should be granted leave to amend to cure any deficiencies in a complaint." (Report at 24.) However, as Plaintiff acknowledges, leave to amend need not be granted when amendment would be futile. *See Kallas v. Fiala*, 591 F. App'x 30, 31 (2d Cir. 2015) (summary order). Here, the Report correctly found that amendment would be futile because "Plaintiff cannot allege new facts to cure the deficiencies in his pleadings." (Report at 24.) Plaintiff's objections do not explain what additional facts he would allege to salvage his claims, describe proposed amendments to his complaint, or assert in what way the Report's finding of futility is incorrect.[3] Furthermore, as the Report notes, this is Plaintiff's fourth lawsuit bringing claims to redress the harm he believes he suffered through his participation in the clinical trial of AstraZeneca's COVID-19 vaccine, and each lawsuit has failed "because of both substantive and procedural defects," (Report at 26). *See Perez v. Oxford*

---

[3] I liberally construe Plaintiff's objection stating that there is no waiver of sovereign immunity for claims brought under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), (*see* Obj. 46–47), as a motion for leave to amend, as Plaintiff did not bring any claims under the FTCA or *Bivens* in his Amended Complaint. As Plaintiff does not indicate what specific facts he would allege to make out a FTCA or *Bivens* claim, leave to amend to add such claims is DENIED.

16

*Univ.*, No. 21-CV-4844, 2022 WL 1468438 (S.D.N.Y. May 10, 2022); *Perez v. Oxford Univ.*, No. 22-CV-1560 (D.D.C. Sept. 23, 2022); *Perez v. Oxford Univ.*, No. 22-CV-7830, 2022 WL 15523951 (S.D.N.Y. Oct. 24, 2022). There is no reason to believe that Plaintiff can remedy the substantive and jurisdictional defects identified by the Report. Plaintiff's objection to the Report's recommendation to deny leave to amend is OVERRULED.

Having overruled Plaintiff's objections, I review the remainder of the Report for clear error. *See Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003). Finding no error, let alone clear error, I hereby ADOPT the entirety of the Report and DISMISS Plaintiff's Amended Complaint in its entirety without leave to amend. Accordingly, Plaintiff's motions for preservation of evidence are hereby DENIED AS MOOT.

## V. Temporary Restraining Order

Plaintiff also moves for a temporary restraining order prohibiting the VA from accessing, modifying, or disseminating Plaintiff's mental health records or relying upon or referencing a fabricated diagnosis in any pending or future administrative or medical proceedings. (Doc. 141 at 11–12.) To obtain a temporary restraining order, the movant must show, among other things, either a likelihood of success on the merits of his underlying claims or sufficiently serious questions going to the merits to make them a fair ground for litigation. *See Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). As all of Plaintiff's claims are subject to dismissal, Plaintiff cannot make that showing here. *J Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023) ("Where a party seeking a temporary restraining order fails to establish a likelihood of success on the merits, 'there is no need to address the other prongs of the analysis.'" (quoting *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d

154, 164 (2d Cir. 2011))); *Jones v. Healthfirst*, No. 18-CV-6834, 2018 WL 6706313, at *3 (E.D.N.Y. Dec. 19, 2018) ("Given the dismissal of the Complaint, there is no likelihood of success on the merits of [pro se] Plaintiff's claims and therefore [the motion] seeking injunctive relief is DENIED."). Therefore, Plaintiff's motion for a temporary restraining order is DENIED.

## VI. Conclusion

For the foregoing reasons, Magistrate Judge Netburn's Report and Recommendation is ADOPTED in full. The Clerk of Court is respectfully directed to terminate Docs. 99, 101, 103, 141, 144, and 145, dismiss this action with prejudice, and close the case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion & Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that appellant demonstrates good faith when seeking review of a non-frivolous issue).

SO ORDERED.

Dated: September 25, 2025
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge